# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>SEARCHMETRICS INC.,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 17-11032 (CSS) |

**BRIGHTEDGE TECHNOLOGIES INC.'S NOTICE OF DEPOSITION OF SEARCHMETRICS INC. PURSUANT TO FED. R. CIV. P. 30(b)(6)**

TO:   William E. Chipman, Jr., Esq.
      Mark D. Olivere, Esq.
      Chipman Brown Cicero & Cole LLP
      Hercules Plaza
      1313 North Market St., Suite 5400
      Wilmington, DE 19801

*Proposed Counsel for the Debtor*

**PLEASE TAKE NOTICE** that pursuant to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 26 and 30(b)(6) of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable by Bankruptcy Rules 7026, 7030, and 9014, on **May 25, 2017, commencing at 9:30 a.m.** or such other time and date as agreed to by the parties, BrightEdge Technologies, Inc., by its attorneys, will take the deposition upon oral examination of Searchmetrics Inc. ("Searchmetrics"). The deposition will take place before a notary public or other person authorized to administer oaths at the offices of Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, Wilmington, DE 19801. The deposition shall be transcribed by stenographic means and may be recorded by audio-visual means.

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: Searchmetrics, Inc. (1635). The mailing address for the Debtor, solely for purposes of notices and communications, is c/o EisnerAmper LLP, 750 Third Avenue, New York, New York 10017, Attn: Wayne P. Weitz.

Federal Rule 30(b)(6) requires that Searchmetrics designate one or more officers, directors or other persons to testify on behalf of Searchmetrics with regard to all matters known or information reasonably available to Searchmetrics on each of the subject matters identified in **Exhibit A** attached hereto.

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Matthew B. Harvey*
Robert J. Dehney (No. 3578)
Gregory W. Werkheiser (No. 3553)
Matthew B. Harvey (No. 5186)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
rdehney@mnat.com
gwerkheiser@mnat.com
mharvey@mnat.com

-and-

**BAKER BOTTS LLP**

Emanuel Grillo (*pro hac vice*)
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-2500
Facsimile: (212) 408-2501
emanuel.grillo@bakerbotts.com

-and-

Omar J. Alaniz  (*pro hac vice*)
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503
omar.alaniz@bakerbotts.com

-and-

Jon V. Swenson (*pro hac vice*)
G. Hopkins Guy III (*pro hac vice*)
1001 Page Mill Road Building One, Suite 200
Palo Alto, California 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699
jon.swenson@bakerbotts.com
hop.guy@bakerbotts.com

*Counsel for BrightEdge Technologies, Inc.*

**Exhibit A**

I. **Definitions**

Unless a contrary meaning applies in context, the following definitions apply:

1. "All" and "each" shall be construed as all, each, any, and every.

2. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the topic of examination all information that might otherwise be construed to be outside of its scope.

3. "Chipman Brown" means Chipman Brown Cicero & Cole, LLP and each of its partners, officers, directors, employees, associates, agents or any other person acting or purporting to act on behalf of Chipman Brown or who assist the foregoing in Chipman Brown's representation of the Debtor.

4. "CRO" means chief restructuring officer.

5. "DIP Financing" means debtor-in-possession financing.

6. "DIP Financing Motion" means the *Motion to Approve Debtor in Possession Financing* filed in the captioned case on May 8, 2017, at Docket No. 14.

7. "DIP Term Sheet" means the DIP Term Sheet annexed as Exhibit C to the DIP Financing Motion.

8. "Distributor Agreement Motion" means the *Motion to Authorize the Debtor to Assume the Non-Exclusive Distributor Agreement and Granting Related Relief* filed in the captioned case on May 10, 2017, at Docket No. 39.

9. "DLA Piper" or "DLA" means DLA Piper LLP (US) and each of its affiliates, partners, officers, directors, employees, associates, agents or any other person acting or purporting to act on behalf of DLA Piper or who assist the foregoing in DLA Piper's representation of the Debtor.

10. "DLA Retention Application" means the *Application/Motion to Employ/Retain DLA Piper LLP (US) as Special Litigation Counsel Nunc Pro Tunc to the Petition Date* filed in the captioned case on May 11, 2017, at Docket No. 49.

11. "EisnerAmper" means EisnerAmper LLP and all affiliates, predecessor and successor entities, partners, officers, directors, employees, agents, professionals, brokers, auctioneers, legal counsel or any other person acting or purporting to act on behalf of EisnerAmper.

12. "Including" shall mean including, but not limited to, and is intended to illustrate the kinds of matters that are responsive to these Requests. Such examples are not intended to be exhaustive of the information sought and shall not, in any way, be read to limit the scope of the Request.

13. "Interim DIP Financing Order" means the *Interim Order (I) Authorizing The Debtor to Obtain Postpetition Secured Financing, (II) Authorizing The Postpetition Use of Cash Collateral, (III) Providing Super-Priority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Scheduling A Final Hearing, and (VI) Granting Related Relief* entered by the Bankruptcy Court for the District of Delaware on May 9, 2017, at Docket No. 31.

14. "Prepetition Lender" means Searchmetrics GmbH.

15. "Searchmetrics" or the "Debtor" means Searchmetrics Inc., and all affiliates, predecessor and successor entities, partners, officers, directors, employees, agents, professionals, brokers, auctioneers, legal counsel or any other person acting or purporting to act on behalf of Searchmetrics Inc.

16. "Searchmetrics GmbH" or "GmbH" means Searchmetrics GmbH, and all affiliates, predecessor and successor entities, partners, officers, directors, employees, agents,

professionals, brokers, auctioneers, legal counsel or any other person acting or purporting to act on behalf of Searchmetrics GmbH.

17. "Time Period" means the period from January 1, 2017, through and including May 9, 2017.

18. "Weitz" means Wayne P. Weitz and all his partners, associates, employees, directors, affiliates, agents, professionals, legal counsel or any other person acting, purporting to act, or indirectly reporting on behalf of Wayne P. Weitz, or who assist Wayne P. Weitz in performing his duties under his engagement with the Debtor.

19. "Weitz Declaration" means the *Declaration of Wayne P. Weitz in Support of Chapter 11 Petition and First Day Pleadings* filed in the captioned case on May 8, 2017, at Docket No. 3.

20. Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Weitz Declaration.

## II. Topics of Examination

1. The Debtor's efforts to obtain DIP Financing from any party other than Searchmetrics GmbH during the Time Period.

2. DIP Financing proposals received by the Debtor from GmbH or any person or entity affiliated with GmbH.

3. DIP Financing proposals received by the Debtor from any person or entity other than GmbH or a person or entity affiliated with GmbH.

4. The "Chapter 11 Milestones" and deadlines set forth in the DIP Term Sheet.

5. The costs and benefits of the Debtor's entry into the DIP Facility versus

any potential alternative DIP Financing or relying on use of cash collateral, including any analysis thereof.

6. Including any analysis made or updated during the Time Period. The Debtor's need for DIP Financing, including, but not limited to, any analysis of the proper sizing of a DIP Financing facility for the Debtor.

7. Consideration or approval of the DIP Facility, including the DIP Term Sheet, by the Debtor's board of directors (or any subcommittee thereof), including any presentations made to the Debtor's board of directors (or any subcommittee thereof) and any meetings of the Debtor's board of directors (or any subcommittee thereof).

8. Consideration of any alternative DIP Financing proposals by the Debtor's board of directors (or any subcommittee thereof), including any presentations made to the Debtor's board of directors (or any subcommittee thereof) and any meetings of the Debtor's board of directors (or any subcommittee thereof).

9. The Debtor's stipulations concerning the "Unsecured Prepetition Claim," as set forth in paragraph F(c) of the Interim DIP Financing Order, including the exercise of business judgment by the Debtor's board of directors or senior management with respect to the making of such stipulation.

10. The Debtor's stipulations concerning the "Prepetition Secured Obligation," as set forth in Paragraph F(d) of the Interim DIP Financing Order, including the exercise of business judgment by the Debtor's board of directors or senior management with respect to the making of such stipulation.

11. The Debtor's stipulations concerning the absence of any claims or causes of action or other equitable remedies against, or with respect to, the Prepetition Lender under the

"Existing Agreements" or otherwise, as more fully set forth in paragraph F(e) of the Interim DIP Financing Order, including the exercise of business judgment by the Debtor's board of directors or senior management with respect to the making of such stipulation.

13. The Debtor's consent, subject to the rights contained in Paragraph 10(a) of the Interim DIP Financing Order, to the finding contained in Paragraph G of the Interim DIP Financing Order that "[t]he Unsecured Prepetition Claim is an allowed general unsecured claim not subject to any offsets, defenses, counterclaims or equitable relief."

13. The Debtor's consent, subject to the rights contained in Paragraph 10(a) of the Interim DIP Financing Order, to the finding contained in Paragraph H of the Interim DIP Financing Order that "(1) the Prepetition Secured Debt Facility governs the Prepetition Secured Obligations, the Prepetition Liens,[] and the prepetition financing relationship between the Debtor and Prepetition Lender and is a legal, valid, binding, and enforceable obligation of the Debtor; (2) no offsets, defenses, counterclaims or rights to any equitable remedy exist adverse to the Prepetition Lender or Prepetition Secured Obligations, and no portion of the Prepetition Secured Obligations is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law; (3) the Prepetition Liens, among other things, secure payment of all of the Prepetition Secured Obligations; and (4) the Prepetition Liens are first priority, properly perfected, valid, and enforceable security interests that are not subject to any claims, counterclaims, defenses, setoff, recoupment or deduction, or equitable remedies and that are otherwise unavoidable and not subject to avoidance, recharacterization or subordination pursuant to any provisions of the Bankruptcy Code, applicable nonbankruptcy law, or any agreement, subject only to Permitted Liens."

14. Any financial, familial or other relationship between any member of the

Debtor's board of directors or senior management and GmbH or any member of GmbH's board of directors or senior management.

15. The Unsecured Loan Agreement, including any schedules, exhibits, amendments, modifications, supplements, and restatements with respect thereto.

16. Any loans made to the Debtor or other obligations incurred by the Debtor under the Unsecured Loan Agreement.

17. Any notice of default received by the Debtor in connection with the Unsecured Loan Agreement during the period from July 1, 2010, through the Petition Date, including, without limitation, that certain notice of default under the Unsecured Loan Agreement issued by GmbH to the Debtor on January 12, 2017.

18. The FPA, including any schedules, exhibits, amendments, modifications, supplements, and restatements with respect thereto.

19. Any purchase by the Debtor under the FPA of access to the SEO Platform from GmbH.

20. Any notice of default received by the Debtor in connection with the FPA during the period from July 1, 2010, through the Petition Date, including, without limitation, that certain notice of default under the FPA issued by GmbH to the Debtor on January 12, 2017.

21. The Debtor's engagement of EisnerAmper.

22. Any consideration or approval by the Debtor's board of directors (or any subcommittee thereof) of the engagement of EisnerAmper.

23. The appointment of Weitz as the CRO of the Debtor.

24. The Debtor's engagement of Chipman Brown as the Debtor's proposed bankruptcy counsel.

25. The Debtor's engagement of DLA Piper, as the Debtor's proposed special litigation counsel.

26. Weitz's negotiations on behalf of the Debtor with respect to the DIP Facility or the terms thereof.

27. Any other person or entity's negotiations on behalf of the Debtor with respect to the DIP Facility or the terms thereof.

28. The Forbearance Agreement, including any schedules, exhibits, drafts, amendments, modifications, supplements, and restatements with respect thereto.

29. Weitz's negotiations on behalf of the Debtor with respect to the Forbearance Agreement or the terms thereof.

30. Any other person or entity's negotiations on behalf of the Debtor with respect to the Forbearance Agreement or the terms thereof.

31. Any consideration or approval by the Debtor's board of directors (or any subcommittee thereof) of the Forbearance Agreement.

32. Weitz's negotiations on behalf of the Debtor with respect to the Prepetition Secured Debt Facility or the terms thereof.

33. Any other person or entity's negotiations on behalf of the Debtor with respect to the Prepetition Secured Debt Facility or the terms thereof.

34. Any consideration or approval by the Debtor's board of directors (or any subcommittee thereof) of the Prepetition Secured Debt Facility.

35. Weitz's negotiations on behalf of the Debtor with respect to the Reaffirmation Agreement or the terms thereof.

36. Any other person or entity's negotiations on behalf of the Debtor with

respect to the Reaffirmation Agreement or the terms thereof.

37. Any consideration or approval by the Debtor's board of directors (or any subcommittee thereof) of the Reaffirmation Agreement.

38. Any loans made to the Debtor or other obligations incurred by the Debtor under the Prepetition Secured Debt Facility.

39. The Distributor Agreement, including any drafts, schedules, exhibits, amendments, modifications, supplements, and restatements with respect thereto.

40. Any purchase by the Debtor under the Distributor Agreement of access to the SEO Platform from GmbH.

41. Weitz's negotiations on behalf of the Debtor with respect to the Distributor Agreement or the terms thereof.

42. Any other person or entity's negotiations on behalf of the Debtor with respect to the Distributor Agreement or the terms thereof.

43. Any consideration or approval by the Debtor's board of directors (or any subcommittee thereof) of the Distributor Agreement.

44. Any analysis of the costs and benefits of the Debtor's continued performance under the Distributor Agreement versus the Debtor's breach, termination or further renegotiation of the Distributor Agreement, including, but not limited to, that certain financial analysis of the Distributor Agreement referenced in Paragraph 16 of the Distributor Agreement Motion.

45. The proposed apportionment of fees and expenses that have been or may be incurred by the Debtor and GmbH to DLA in connection with the matters described in Paragraph 11 of the DLA Retention Application, including any analysis, thereof.

46. The "Guaranty" (as defined in Paragraph 27 of the DLA Retention Application), including any drafts, schedules, exhibits, amendments, modifications, supplements, and restatements with respect thereto.

47. Any person or entity's negotiations on behalf of the Debtor with respect to the Guaranty.

48. The Debtor's liability for all or any portion of attorneys' fees or expenses incurred to DLA during the period from May 7, 2016, through May 8, 2017, whether or not such obligations were paid as of the Petition Date.

49. Any payment made during the period from May 7, 2016, through May 8, 2017, by the Debtor, or from the Debtor's property, to DLA, or for DLA's benefit, on account for any debt owed by the Debtor to DLA.

50. The role played by Dirk Wolf in entering or negotiating the DIP Facility, the DIP Term Sheet, the Prepetition Secured Debt Facility, the Reaffirmation Agreement, the Distributor Agreement, the engagement agreement with EisnerAmper, and/or any other herein defined term or transaction on behalf of the Debtor.

51. The role played by Marcus Tober in entering or negotiating the DIP Facility, the DIP Term Sheet, the Prepetition Secured Debt Facility, the Reaffirmation Agreement, the Distributor Agreement, and/or any other herein defined term or transaction on behalf of the Debtor.